No. 12 Civ. 4761 (JSR).

United States District Court, S.D. New York.

Feb. 21, 2013.

**DEXIA SA/NV; Dexia Holdings, Inc.; FSA Asset Management LLC; Dexia Credit Local SA, Plaintiffs,**

v.

**BEAR, STEARNS & CO., INC.; The Bear Stearns Companies, Inc.; Bear Stearns Asset Backed Securities I LLC; EMC Mortgage LLC (f/k/a EMC Mortgage Corporation); Structured Asset Mortgage Investments II Inc.; J.P. Morgan Acceptance Corporation I; J.P. Morgan Mortgage Acquisition Corporation; J.P. Morgan**

**556**

Jeroen Van Kwawegen, Mark Lebovitch, Michael Dains Blatchley, Timothy Alan Delange, William Curtis Fredericks, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, for Plaintiffs.

Daniel Slifkin, Joe Wesley Earnhardt, Cravath, Swaine & Moore LLP, New York, NY, for Defendants.

### MEMORANDUM

JED S. RAKOFF, District Judge.

On January 19, 2012, plaintiffs Dexia SA/NV, Dexia Holdings, Inc., FSA Asset Management LLC, and Dexia Credit Local SA filed this action in the Supreme Court of the State of New York, New York County, alleging claims of fraud, fraudulent inducement, aiding and abetting fraud, negligent misrepresentation and successor liability under New York common law against defendants, thirteen Bear Stearns, JPMorgan, and Washington Mutual-owned entities. Plaintiffs filed an Amended Complaint in state court on May 18, 2012, alleging the same claims arising from their purchase of over $1.6 billion in certificates issued in 51 residential mortgage-backed securities ("RMBS") offerings in 2006 and 2007, for which defendants served as sponsors, depositors, and/or underwriters (or are currently successors to or in control of such entities). Am. Cmplt. ¶¶ 2, 13. Specifically, the Amended Complaint alleged that defendants misrepresented the characteristics and risk profiles of the certificates and of the nearly 250,000 mortgage loans—eighteen of which were loans on properties located in the Virgin Islands—underlying the securities, in various registration statements, prospectuses and prospectus supplements, and other written materials, on which plaintiffs relied in deciding to invest in the securitizations. Am. Cmplt. ¶¶ 1–9.

On June 18, 2012, defendants filed a Notice of Removal, claiming federal jurisdiction under both 12 U.S.C. § 632 and 28 U.S.C. § 1334(b). On July 18, 2012, Plaintiffs moved for an order remanding the action back to New York state court. By a "bottom line" Order dated September 11, 2012, the Court denied plaintiffs' motion to remand. This Memorandum explains the reasons for that ruling.

█ Defendants principally claim federal jurisdiction under the Edge Act, 12 U.S.C. § 632, which provides that:

Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving internation-

al or foreign banking, or banking in a dependency or insular possession of the United States, ... either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

*Id.* By its plain terms, then, the Edge Act provides for federal jurisdiction when "(1) the case is civil in nature, (2) one of the parties is a corporation organized under the laws of the United States (i.e., a national bank), and (3) the suit arises out of transactions involving international banking or international financial operations (including territorial banking)." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.,* 820 F.Supp.2d 555, 556 (S.D.N.Y.2011) (citing *Jana Master Fund, Ltd. v. JP Morgan Chase & Co.,* 490 F.Supp.2d 325, 328 (S.D.N.Y.2007)).

■ Here, defendant JPMorgan Chase Bank, N.A., is a national bank chartered under federal law, Am. Cmplt. ¶ 26, and eighteen properties underlying the mortgages collateralized in one of the securities at issue, the securitization entitled "JPALT 2006–A7," were originated in the Virgin Islands, an insular possession of the United States. *See* Notice of Removal ¶ 24 & Ex. 5 at A–2, ECF No. 1 (filed June 18, 2012). Thus, on its face, this case meets all of the jurisdictional requirements of the Edge Act, and removal was proper.

Plaintiffs' opposition to jurisdiction under the Edge Act is twofold: first, that

JPMorgan Chase Bank did not itself engage in any of the international banking transactions, so that the Edge Act should not apply; and second, that the Amended Complaint's claims do not "aris[e] out of transactions involving international or foreign banking" because the plaintiffs' claims are based on defendants' alleged fraudulent marketing of RMBS offerings to U.S. entities in the United States, and not on the underlying mortgages.

■ "[T]he central provision of the [Edge Act's] jurisdictional grant ... is the necessity that the transaction in question be one 'arising out of ... international or foreign banking.'" *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 791–92 (2d Cir.1980). Consistent with the purposes of the Act, this phrase is read broadly in order to protect federally chartered banks engaged in international banking from variations in state law and the local prejudices of state and insular courts. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1462 (D.C.Cir.1995) ("Crafted in the wake of the turmoil that the World War had caused in international financial markets, the Edge Act called forth a new type of federally controlled institution intended to increase the stability of, and the public's confidence in, international markets."); *see also* Steven M. Davidoff, *Section 632: An Expanded Basis of Federal Jurisdiction for National Banks,* 123 Banking L.J. 687, 689–90 (2006) ("[T]he role of Section 632 is to permit the establishment of a uniform body of law for national banks and provide a federal forum for disputes in which national banks are involved in international or foreign transactions...").

■ To further this purpose, the Edge Act provides a federal forum wherever a federally chartered bank faces liability on claims derived from international banking transactions. *See Corporacion Venezola-*

*na de Fomento,* 629 F.2d at 792 (finding the Edge Act satisfied when the plaintiff's "complaint clearly viewed [the federally chartered bank] as potentially liable for damages"). Thus, it is irrelevant whether JPMorgan Chase Bank itself issued the mortgages in the Virgin Islands because, as another court in this district has found, the Edge Act does not require "a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought." *Am. Int'l Grp.,* 820 F.Supp.2d at 557–58. Here, J.P. Morgan Mortgage Acquisition Corp., a wholly-owned subsidiary of JPMorgan Chase Bank, acted as the sponsor of the JPALT 2006–A7 securitization, in which the Virgin Island mortgages were included. Am. Cmplt. ¶¶ 26, 28. Thus, should plaintiffs prevail on their claims, JPMorgan Chase Bank would face liability on the international banking transactions that supply jurisdiction under the Edge Act. *Accord Allstate Ins. Co. v. Citi-Mortgage, Inc.,* 11 Civ. 1927, 2012 WL 967582, at *3 (S.D.N.Y. Mar. 13, 2012) (stating that the Edge Act requires that the national bank defendant be "potentially liable to the plaintiffs on any claims arising from international banking").

■ As to plaintiffs' other contention— that their claims arise not out of the international mortgage transactions, but rather out of a domestic securities transaction— this is belied by the very nature of their claims. Critical to plaintiffs' claims that defendants made material misstatements and omissions is the question of whether the underlying mortgage loans complied with the underwriting standards described in the defendants' offering materials. Plaintiffs even allege in the Amended Complaint that "the value of the RMBS depended on the quality of the mortgages in the designated pools, including the borrowers' ability to timely make their mortgage payments and the value of the collateral supporting the mortgages." Am. Cmplt. ¶ 2. In this way, the process of engaging in the territorial mortgage transactions is sufficiently central to the plaintiffs' claims to find that the case "aris[es] out of" those transactions. Moreover, as other courts in this district have commonly recognized, "[a] suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking [or banking in a dependency or insular possession]," *In re Lloyd's Am. Trust Fund Litig.,* 928 F.Supp. 333, 338 (S.D.N.Y.1996), even if that involvement is merely "incidental," *Am. Int'l Grp.,* 820 F.Supp.2d at 557. *See also Pinto v. Bank One Corp.,* 02 Civ. 8477, 2003 WL 21297300, at *3 (S.D.N.Y. June 4, 2003) (finding the requirements of the Edge Act satisfied even though the five international banking transactions represented only a "small portion of the total").

For the foregoing reasons, the Court finds the allegations in the Amended Complaint sufficiently arise out of international banking transactions to support federal jurisdiction under the Edge Act, making defendants' removal appropriate.[1] Accord-

---

1. Defendants also claim federal jurisdiction pursuant to 28 U.S.C. § 1334(b) based on their claim that this case is "related to" bankruptcy proceedings, and therefore this case is removable under 28 U.S.C. § 1452(a). In particular, defendants claim that they have contractual indemnification and contribution rights against the depositors and sponsors of the securitizations at issue in this case, thirteen of which are currently in bankruptcy proceedings that have been triggered by the filing of this lawsuit. Notice of Removal ¶ 14. However, even assuming that this case is related to the pending bankruptcy proceedings, the parties effectively concede that the application of the mandatory remand provision contained in 28 U.S.C. § 1334(c)(2) turns on whether this Court can exercise jurisdiction under the Edge Act. *See Certain Underwriters at Lloyd's, London v. ABB Lummus Global,*

ingly, the Court, in its Order of September 11, 2012, denied the plaintiffs' motion to remand to state court.

*Inc.*, 337 B.R. 22, 26 (S.D.N.Y.2005) (including as a factor for mandatory remand whether "section 1334 is the sole basis for federal jurisdiction"). Thus, because the Court's determination as to whether its exercise of jurisdiction is proper turns primarily on jurisdiction under the Edge Act, the Court reaches only that ground.